# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

PAMELA K. CAUTHEN                                                   PLAINTIFF

VS.                                                           CIVIL ACTION NO. 4:19-cv-14-DAS

COMMISSIONER OF SOCIAL SECURITY                            DEFENDANT

## MEMORANDUM OPINION

This matter is before the court pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security ("Commissioner") denying the application of Pamela K. Cauthen for supplemental security income under the Social Security Act. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit.

The court, having reviewed the administrative record, the briefs of the parties, the applicable law, and having heard oral argument, finds the Commissioner's decision denying benefits should be affirmed.

*Facts and Procedural History*

On January 25, 2017, Pamela K. Cauthen filed her application for SSI. After the application was denied at the lower levels, a hearing was held before an administrative law judge ("ALJ") on

February 27, 2018. An unfavorable decision was issued on April 2, 2018. The Appeals Council denied review. The case is now before this court on appeal.

The ALJ found that Cauthen suffered from the following medically determinable impairments: degenerative changes of the cervical and lumbar spine, diabetes mellitus, hypertension, peripheral neuropathy, gastroesophageal reflux disease, osteoarthritis, allergies, a history of carpal tunnel syndrome with carpal tunnel release, a history of rotator cuff surgery, and a history of prior back surgeries. However, none of these—singularly or in combination—was found to be severe. Finding no severe impairment(s), the ALJ found claimant not disabled and therefore not entitled to SSI benefits.

The claimant asserts the ALJ's finding of no severe impairment(s) is not supported by the medical record.

## *Law and Standard of Review*

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found

to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434(5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential process.[1] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, claimant must prove he is not currently engaged in substantial gainful activity.[3] Second, claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three, the ALJ must conclude claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1.[5] Fourth, claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[6] If claimant is successful at

---

[1] *See* 20 C.F.R. § 404.1520 (2012).
[2] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).
[3] 20 C.F.R. § 404.1520(b) (2012).
[4] 20 C.F.R. § 404.1520(c) (2012).
[5] 20 C.F.R. § 404.1520(d) (2012). If a claimant's impairment meets certain criteria, that impairment is of such severity that it would prevent any person from performing substantial gainful activity. 20 C.F.R. § 404.1525 (2012).
[6] 20 C.F.R. § 404.1520(e) (2012).

all four of the preceding steps, the burden shifts to the Commissioner to prove, considering claimant's residual functional capacity, age, education, and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which claimant can perform, claimant is given the chance to prove that he cannot, in fact, perform that work.[8]

### *Analysis and Discussion*

Claimant cites the following evidence to rebut the ALJ's finding of non-severity:

- A <u>September 2015</u> visit with Dr. Jimmy Miller describing claimant as having multiple lumbar surgeries with a "10+ year history" of radiating lumbar pain, "hyperesthesia on left foot," and pain aggravated by walking, standing, sitting, and lying down.[9] On physical examination, Dr. Miller found "tenderness bilaterally in parascapular region" and "tender over left trapezius."[10] On a specified lumbar exam, Dr. Miller again commented that claimant had "tenderness bilaterally in parascauplar region" and was "tender over left trapezius[,] with flexed hip and knee and resisted abduction bilaterally, pain only in back."[11]

- <u>March 2015</u> progress notes from Nurse Practitioner Kara McKay, who listed claimant's reason for appointment as "[o]uter part of left foot burns since she had back surgery," inability to sleep at night, and "severe neck pain."[12] McKay assessed claimant with "diabetes mellitus with neurological manifestations," "peripheral neuropathy," "degenerative dis disease[-]cervical," "depression with anxiety," and "degeneration of lumbar or lumbosacral intervertebral disc."[13]

- <u>April 2015</u> progress notes from McKay, who again listed burning in the left foot as the reason for appointment and made the same assessments as she did in March.[14]

---

[7] 20 C.F.R. § 404.1520(f)(1) (2012).
[8] *Muse*, 925 F.2d at 789.
[9] [Dkt. 7], p. 284.
[10] *Id.* at 285.
[11] *Id.* at 286.
[12] *Id.* at 290.
[13] *Id.*
[14] *Id.* at 293.

- December 2015 progress notes from McKay assessing claimant with uncontrolled diabetes mellitus type II, peripheral neuropathy, and osteoarthritis.[15] McKay made the same assessments in March 2016[16] and June 2016.[17]

- In October 2016, McKay again assessed uncontrolled type II diabetes and peripheral neuropathy, and specified that claimant suffered from "primary osteoarthritis of both knees."[18]

- On January 30, 2017, McKay assessed claimant with uncontrolled type II diabetes, peripheral neuropathy, primary osteoarthritis of both knees, and degenerative disc disease, lumbar.[19]

- September 2015 MRI of the cervical spine with an impression of "central disc protrusion at C6-C7" and results listed as "mild[] impinging upon the spinal cord" and "[d]egenerative changes . . . scattered throughout the cervical spine."[20]

- May 2015 x-ray of the lumbar spine with an impression of "degenerative arthritis" and results listed as "[v]ertebral bodies are intact and in good alignment. Moderate changes of degenerative arthritis are noted. Chronic disc disease is noted at L4-L5 and L5-S1."[21]

- May 2015 MRI of the lumbar spine with an impression of "degenerative changes with left neural foraminal compromise at L4-5 and L5-S1" and results of "mildly compromised" left neural foramina "due to bony osteophytes and bulging discs. No evidence of disc herniation or abnormal enhancing lesion."[22]

Claimant argues these records fail to meet the Fifth Circuit's standard for a non-severe impairment, which is defined as "a slight abnormality having such minimal effect on the individual that it would

---

[15] *Id.* at 299.
[16] *Id.* at 305.
[17] *Id.* at 308.
[18] *Id.* at 311.
[19] *Id.* at 315.
[20] *Id.* at 575. This MRI was interpreted by Dr. Donald Russell, Sr.
[21] *Id.* at 576. This x-ray was interpreted by Dr. Sunder Jagwani.
[22] *Id.* at 577. This MRI was interpreted by Dr. Donald Russell, Sr.

not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."[23]

The Commissioner argues that the bulk of these records predate the application and therefore fall outside the relevant time period for determining SSI eligibility prescribed in 20 C.F.R. § 416.330 (an SSI application remains in effect "from the date it is filed . . . until the hearing decision is issued"). Claimant counters that this time period is relevant only as to payment—not as to evidence of disability. However, the case law of district courts both within and outside this circuit suggests otherwise.

In a similar case from the Eastern District of Louisiana, the ALJ found claimant's migraines as not severe.[24] The court held that "[a]lthough plaintiff experienced severe migraines in 2002 and 2003 . . . the medical records do not contain complaints of or treatment for migraines during the relevant time period."[25] While the regulations "permit the claimant to submit medical evidence from the 12 months preceding his application date" in order to obtain a complete record to establish duration, "evidence concerning events prior to the claimant's application may be properly disregarded because such evidence is 'outside the relevant period of disability.'"[26] "The medical evidence dating before the application date is therefore generally irrelevant to a Title XVI [SSI] claim."[27] "Accordingly, even if the claimant was disabled before his application date, to qualify

---

[23] *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).
[24] *Plaisance v. Astrue*, 2008 WL 4808852, at * 8 (Oct. 31, 2008).
[25] *Id.* The court affixed the relevant time period as running from the date of application through the date of the ALJ's decision. *Id.* at * 1.
[26] *Chiles v. Colvin*, 2014 WL 630888, at *9-10 (N.D. Tex. Feb. 18, 2014) (quoting *Slaughter v. Astrue*, 857 F. Supp. 2d 631, 643 (S.D. Tex. 2012)).
[27] *Id.* at * 9.

for SSI payments, he must show that he was still disabled between his application date and the date of the ALJ's decision."[28]

In an Eastern District of New York case, claimant's medical record suggested that he may have had PCP and/or wasting syndrome in late 2009 and/or early 2010, but contained no definitive diagnosis.[29] However, the court found that "whether Plaintiff had PCP or wasting syndrome in 2009 is beside the point. Even if Plaintiff's condition met a listed impairment in 2009 and 2010, to qualify for benefits, Plaintiff must establish that he was disabled *after* he filed his application for benefits, which was on April 14, 2011."[30] The court continued to hold that, "[w]hile there may be some evidence suggesting PCP or wasting syndrome in late 2009 and early 2010 (over a year prior to Plaintiff's application date), there is no question that Plaintiff has failed to identify any evidence demonstrating that he had wasting syndrome or PCP after his application date."[31]

The Southern District of Mississippi likewise applies this standard.[32] While the ALJ summarized claimant's complete medical file, he "properly focused his inquiry on the period between the application date and the ALJ's decision. It was incumbent on Plaintiff to produce evidence of disability during this period."[33]

---

[28] *Id.*

[29] *Alston v. Colvin*, 2015 WL 5178158, at * 9 (E.D. N.Y. Sept. 3, 2015).

[30] *Id.*

[31] *Id.*

[32] *See Cross o/b/o T.C. v. Berryhill*, 2018 WL 1163302 (S.D. Miss. Jan. 30, 2018).

[33] *Id.* at *4. *See also Jones v. Colvin*, 2016 WL 861334, at * 11 (S.D. Tex. Jan. 28, 2016) ("[T]he ALJ was not required to give any weight to [doctor's] statement two months outside the relevant period"); *Jackson v. Berryhill*, 2017 WL 4773314, at * 5 (M.D. N.C. Oct. 20, 2017) ("Significantly, Plaintiff glosses over the fact that the objective medical findings . . . must have occurred *after* her application date of February 11, 2013, in order to qualify as disabling.").

In Cauthen's case, the medical evidence from the relevant time period provides no evidence of specific functional deficits. The only evidence cited by Plaintiff that relates to this time period is McKay's progress notes from January 30, 2017. However, that record contains only assessments or diagnoses and fails to address functionality. On February 7, 2017, Nurse Practitioner Maggie Taylor made normal findings on physical examination and assessed claimant with acute non-recurrent sinusitis with fever and chills.[34] Claimant again saw McKay on July 24, 2017.[35] While McKay listed claimant as having active diagnoses of type 2 diabetes, peripheral neuropathic pain, lumbar disc degenerative disease, and bilateral osteoarthritis of the knee, her examination showed normal findings and full range of motion—albeit, with some lumbar pain with flexion and extension.[36] In August 2017, claimant underwent a colonoscopy.[37] In November 2017, claimant presented at the Greenwood Leflore Hospital with an allergic reaction to medication—with normal findings relative to her determinable impairments.[38]

While in rare instances "medical records from before [the application date] may be relevant to the extent they provide information relative to whether [claimant] was disabled on or after the date of the application,"[39] none of claimant's pre-application medical records relate to whether she was disabled *during the relevant period*. In fact, the few records from that time period show normal findings (or have no relation to her determinable impairments). Consequently, claimant has not

---

[34] [Dkt. 7] at * 319.
[35] *Id.* at 322-26.
[36] *Id.* at 325.
[37] *Id.* at 373.
[38] *Id.* at 351-52.
[39] *Karen D. v. Berryhill*, 2019 WL 1228200, at * 1 (N.D. Tex. Mar. 15, 2019).

shown that her identified medically determinable impairments would interfere with her ability to work.

## *Conclusion*

Substantial evidence supports the ALJ's step-two denial of SSI benefits based on a determination that claimant does not suffer from any severe impairments. This matter is, therefore, AFFIRMED. A final judgment consistent with this opinion will follow.

SO ORDERED, this the 20th day of November, 2019.

/s/ David A. Sanders
 UNITED STATES MAGISTRATE JUDGE